IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CHRISTY BLODGETT | § | |
| v. | § | CIVIL ACTION NO. 6:11CV513 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § | |

MEMORANDUM OPINION AND ORDER

On January 4, 2011, Plaintiff initiated this civil action pursuant to the Social Security Act (The Act), Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits. Pursuant to 28 U.S.C. § 636(c), the case was assigned to the undersigned for disposition.

**I.    HISTORY**

On January 12, 2009, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits and also protectively filed a Title XVI application for supplemental security income benefits. *See* Transcript ("Tr.") at 12 (Administrative Law Judge ("ALJ") decision). In both applications, she alleged disability beginning January 6, 2009. *Id*. Both were denied initially on June 5, 2009. *Id*. They were denied on reconsideration on September 18, 2009. *Id*. Plaintiff sought review of the denial. An administrative hearing was conducted before the ALJ on March 23, 2010. *Id*. at 12, 46-85 (transcript of administrative hearing). Plaintiff appeared and testified, represented by counsel. *Id*. A supplemental administrative hearing was conducted on June 1, 2010. *Id*. at 12, 26-45. A vocational expert, Joyce R. Shoop, and medical experts Charles M. Murphy, M.D., and Glen

1

McClure, Ph.D., appeared and testified during the supplemental hearing; Plaintiff, represented by counsel, also appeared but added no testimony. *Id*.

The ALJ issued an unfavorable decision on July 13, 2010, *id*. at 8-25, and Plaintiff sought review. On July 29, 2011, the Appeals Council denied review. Tr. at 1. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Plaintiff then filed the instant action for review by this Court.

## II. STANDARD

Title II of the Act provides for federal disability insurance benefits. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. See *Davis v. Heckler*, 759 F.2d 432, 435, n.1 (5th Cir. 1985); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 11055th (5th Cir. 1980).

Judicial review of the denial of disability benefits under section 205(g) of the Act, 42, U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner]'s, even

if the evidence preponderates against the [Commissioner]'s decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance – that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed.Appx. 382, 383 (5th Cir.2003) (*citing Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n.4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). However, the Court must do more than "rubber stamp" the ALJ's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook*, 750 F.2d 391, 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the

record in a prior proceeding." 42. U.S.C. § 405(g) (2000); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process. *Villa*, 895 F.2d at 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; *see Bowling*, 36 F.3d at 435 (citing *Harrel*, 862 F.2d at 475). Under the five-step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f). An affirmative answer at Step

One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at step three, or an affirmative answer at steps four and five, creates a presumption of disability. *Id.* To obtain Title II disability benefits, Plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir.1981), *cert. denied*, 455 U.S. 912, 102 S. Ct. 1263, 71 L. Ed. 2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam).

### III. ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ made the following findings in his July 13, 2010, decision:

The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

The claimant has not engaged in substantial gainful activity since January 6, 2009, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

The claimant has the following severe impairments: degenerative disc disease and bipolar disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift up to 20 pounds occasionally, 10 pounds frequently, stand/walk 6 hours of an 8 hour workday, sit 6 hours of an 8 hour workday and push/pull unlimited except as shown for lift/carry as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) narrowed by the need for no ladders or scaffolds and occasional posturals. She retains the ability to perform unskilled work, interact appropriately with co-workers and supervisors and deal with change in the workplace. The residual functional capacity is based on the evidence of record and testimony at the hearing.

The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> The claimant has not been under a disability, as defined in the Social Security Act, from January 6, 2009, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

Tr. at 14, 15-16, 18, 19, 20. The ALJ determined that Plaintiff was not disabled under sections 216(I) and 223(d) (period of disability and disability insurance benefits) or section 1614(a)(3)(A) (supplemental security income benefits) of the Social Security Act. Tr. at 20.

## IV. DISCUSSION AND ANALYSIS

Plaintiff asserts she cannot work because she suffers from "Bipolar, depression, anxiety, carpal tunnel, lower-back disc out." *See* Tr. at 224 (undated Disability Report - Adult). She contends that these impairments limit her ability to work because "As far as the carpal tunnel, it gives me trouble. It is in my right hand. I cannot stand or lift much (15-20 lbs) due to my back problems. I have pains shooting from my spine up to my neck. If I move a certain way, the nerve shoots pains up my back. I have problems when I am walking. I can't squat. I can't sit too long. I feel down all of the time and they are trying to adjust my medications. I wear a brace on my hand usually every day" *Id*. She reported a change in her condition as of May 1, 2009, consisting of "Back worse in pain and movement. Hand goes numb more than was." Tr. at 256 (undated Disability Report - Appeal). She asserted new limitations including, "Have high blood pressure found out in July now have nerve problems with right elbow and left hand." *Id*. She reported another change in her condition as of August 2009, consisting of "Have found out that I have 2 knots on my right and left side. They are checking to see what are [*sic*], have alergies [*sic*] and hands getting worse, arthritis." Tr. at 282 (second undated Disability Report - Appeal). She asserted new limitations including, "Mental having more trouble dealing with problems, people." *Id*.

6

During the first administrative hearing, Plaintiff restated and amplified these statements. *See* Tr. at 50-82. She stated that her hand and back problems interfered with her ability to work. Tr. at 55. She has carpal tunnel syndrome in her right hand. *Id*. Therapy and treatments did not work. *Id*. at 55-56. She testified she cannot lift items with her right hand. *Id*. at 56. She can lift small items like pens and manipulate a keyboard, but not for long due to tingling and numbness in her fingers. *Id*. She testified that her physicians want to perform surgery, but did not resolve the status of that plan. *Id*. Her back problems derive from a car accident in 1998. *Id*. at 58. Two of her vertebrae were broken in her neck and a disc in her back shifted, causing lower back pain and loss of feeling and tingling in her buttocks. *Id*. She cannot feel her left leg, at least the upper portion of it. *Id*. She has to continually shift her position when sitting. *Id*. at 59. She can sit no more than 10 or 15 minutes, during which she continually shifts her position. *Id*. at 60. She further testified she can stand only 10 to 15 minutes at a time and no more than two hours in a day. *Id*. at 62. Physical therapy has resulted in more pain. *Id*. at 64.

Plaintiff also testified she suffers from depression and bipolar disorder. *Id*. at 66. She had been going to the Andrews Center but now sees psychiatrist Dr. Gloria Brun because she did not get along with the psychiatrists at the Andrews Center. *Id*. at 66-67. She suffers from mood swings, with more lows than highs at the time of the hearing, though she had previously had more highs. *Id*. at 67-68. When her medication was being adjusted for effectiveness, she would "fly off the handle" and become aggressive and angry toward others. *Id*. at 68. Her physical pain affects her mental status, anger, aggravation and depression. *Id*. at 69. The remainder of her testimony was consistent with the foregoing.

Plaintiff asserts two issues: (1) the ALJ failed to weigh all of the medical opinions relating to Plaintiff's impairments (Pltf Brf at 10); and (2) the ALJ's RFC was not based upon substantial evidence, with regard to both Plaintiff's physical and mental limitations (*id*. at 13).

### A.  Medical Source Opinions

In this contention, Plaintiff asserts that the ALJ failed to take into account all of the various medical opinions, including state agency and treating physician opinions, with regard to her mental impairments. Although she also challenges certain of the ALJ's determinations with regard to her physical limitations in the second issue listed above, she limits her argument to the subject of her mental limitations in this first issue. More specifically, Plaintiff contends that the ALJ improperly accepted the testimony of non-examining medical expert psychologist Glen McClure, Ph.D., over that of her treating psychiatrist, Gloria R. Brun, M.D. Plaintiff is correct.

In his decision, the ALJ rated Plaintiff as moderately restricted in activities of daily living; with moderate difficulties in social functioning; with moderate difficulties in concentration, persistence or pace; and with no episodes of decompensation, which have been of extended duration. *See* Tr. at 15. When determining Plaintiff's RFC, the ALJ found that "[s]he retains the ability to perform unskilled work, interact appropriately with co-workers and supervisors and deal with change in the workplace." *Id*. at 15-16. In other words, he placed virtually no limitations on her mental ability and based that determination "on the evidence of record and testimony at the hearing." *Id*. at 16.

The evidence of record includes a number of clinical examinations and progress notes by Plaintiff's treating psychiatric staff at the Andrews Center, Tr. at 306-76 (January 31, 2007 - June 25, 2008), and by treating psychiatrist Dr. Brun, *id*. at 523-25, and 545 (March 25, 2009 - April 23, 2010)

with a Mental Impairment Questionnaire, *id*. at 535-43 (completed March 22, 2010); two different consultative examining physicians including psychiatrist Gurjeet S. Kalra, M.D., *id*. at 404-06 (May 5, 2009), and psychologist George R. Mount, Ph.D. (Clinical Interview and Mental Status Examination), *id*. at 604-06 with attached Millon Clinical Multiaxial Inventory-III (MCMI-III) report, *id*. at 607-15 (May 4, 2010). In addition, a state agency non-examining psychiatrist, Margaret Meyer, M.D., completed a Psychiatric Review Technique Form (PRTF), *id*. at 407-20 (June 3, 2009). During the supplemental administrative hearing, the ALJ also took the testimony of non-examining psychologist Glen McClure, Ph.D., upon which the ALJ primarily relied in preparing his decision, which is the genesis of Plaintiff's instant contention.

"The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton*, *supra*, 209 F.3d at 455 (citing *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir.1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994), *cert. denied*, 514 U.S. 1120, 115 S. Ct. 1984, 131 L. Ed. 2d 871 (1995)). "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Newton*, 209 F.3d at 455 (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (in turn, citing 20 C.F.R. § 404.1527(d)(2)). "Good cause for abandoning the treating physician rule includes disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence." *Leggett*, 67 F.3d at 566 (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (bracketed phrase added in *Leggett*), *cert. denied* 514 U.S. 1120, 115 S. Ct. 1984, 131 L. Ed. 2d 871 (1995)).

Ordinarily, to reject the opinion of a treating physician, an ALJ must first conduct the analysis of factors contained in 20 C.F.R. §§ 404.1527(c) and 416.927(c); *see also Newton*, 209 F.3d at 456. These factors include: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Id*. However, such an analysis is only required "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist . . . ." *Id*. at 453; *Holifield v. Astrue*, 402 Fed. Appx. 24, 27 (5th Cir. 2010) (per curiam); *Hall v. Astrue*, 2011 WL 1042285, at *8 (N.D. Tex. Mar. 21, 2011). Here, there was no such controverting medical evidence from either a treating or examining physician. The progress notes from the Andrews Center reflect a high number of missed or rescheduled appointments, but are otherwise relatively consistent with Dr. Brun's progress notes. The two consultative evaluations by Dr. Kalra and Dr. Mount also contain consistent findings and diagnoses, and make no explicit assessment of functional limitations contrary to those found by Dr. Brun. There was only an opinion by a non-examining psychologist, Dr. McClure, who independently interpreted the results of certain medical record to arrive at his own contrary testimony.

Dr. Brun's March 22, 2010, opinion is expressed in her responses to a Mental Impairment Questionnaire. In this case, Dr. Brun established in her opinion that she had treated Plaintiff since March 25, 2009. Tr. at 536. The opinion was rendered a year later, on March 22, 2010, *id*. at 543, after having treated Plaintiff at least 13 times in the intervening year, as recently as February 24, 2010. *See id*. at 401-02, 523-25, 545 (also documenting continuing treatment at least twice after rendering

the opinion).[1] On March 22, 2010, Dr. Brun diagnosed Plaintiff with Bipolar Disorder, Mixed State at Axis I. *Id*. at 536. She further identified Plaintiff at Axis III with migraines, neurological - chronic back pain and asthma, and at Axis IV with chronicity of disorders, marital conflicts, severity of emotional distress. *Id*. Dr. Brun determined that Plaintiff's Global Assessment of Functioning ("GAF") at that time was 55 and her highest GAF in the previous year was 65. *Id*. The signs and symptoms associated with these diagnoses were poor memory; sleep disturbance; mood disturbance; emotional lability; anhedonia or pervasive loss of interests; feelings of guilt/worthlessness; difficulty thinking or concentrating; manic syndrome; and hostility and irritability. *Id*. at 536-37. She also remarked that Plaintiff has two sons with mood disorders, who are treated with psychotropic medications. *Id*. at 537. With regard to the clinical findings demonstrating the severity of Plaintiff's impairment, Dr. Brun opined that "Patient exhibits episodes of severe mood swings, irritability & frustration, easily over-whelmed, crying spells present. Diffic[ulty] with sustaining concentration/focusing." *Id*. She explicitly opined that Plaintiff is not a malingerer. *Id*. She remarked that she had provided "Aggressive treatment with psychotropic medications: Additions of mood stabilizer, modifications in doses. Recent improvement in compliance of meds." *Id*. Current medications included Cymbalta at 60 mg and Trileptal at 600 mg. *Id*. at 538. Due to the "[r]ecent increase in dose of Trileptal [Dr. Brun noted that] possible sedation experienced" as a side effect. *Id*.

---

[1] The Commissioner contends that Plaintiff treated with Dr. Brun in March and April 2009, but then did not return until January 2010, arguing that there is little treatment basis for Dr. Brun's opinion. *See* Comm'r Brf at 4-5 (citing Tr. at 401-02, 545). The Commissioner is incorrect and did not consider Dr. Brun's series of progress notes at 523-35. Dr. Brun actually treated Plaintiff on March 25, April 22, June 10, July 22, August 21, September 23, October 21, November 11, and December 16, 2009; and on January 5-6, January 20, February 24, March 25 and April 23, 2010, before the then-current medical records were incorporated into the medical evidence of record for the Administration's purposes. *See* Tr. at 401-02, 523-25, 545.

Dr. Brun's prognosis of Plaintiff was "poor/guar[d]ed due to severity of illness & the surrounding stressors." *Id*.

Dr. Brun further opined that Plaintiff impairments or treatment may "[o]n the average," cause Plaintiff to be absent from work "[m]ore than three times a month." *Id*. at 539. She identified the particular medical or clinical findings supporting her opinion of Plaintiff's limitations as:

Clinical findings since 3-25-09:

- erratic, mood swings

- intense irritability

- multiple medical problems/pain exacerbate depression.

*Id*. at 539. Dr. Brun then opined as to Plaintiff's limitations with regard to the ability to perform unskilled work, using a defined scale of from "poor or none" ("no useful ability to function in this area") to "fair" ("ability to function in this area is seriously limited, but not precluded") to "good" ("ability to function in this area is limited but satisfactory") to, finally, "unlimited or very good" ("ability to function in this area is more than satisfactory"). *Id*. at 539. Notably, Dr. Brun opined that Plaintiff's mental impairment left her with "poor or none" or "fair" ability to perform most functions. She opined Plaintiff's ability was "poor or none" with regard to remembering work-like procedures; maintaining regular attendance and being punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or

exhibiting behavioral extremes; and dealing with normal work stress. *Id*. at 540. She further opined that Plaintiff's ability was "fair" with regard to understanding and remembering very short and simple instructions; carrying out very short and simple instructions; maintaining attention for two hour segment; making simple and work-related decisions; asking simple questions or requesting assistance; responding appropriately to changes in a routine work setting; and being aware of normal hazards and taking appropriate precautions. *Id*. Dr. Brun explained that the medical findings supporting these assessments included Plaintiff's "chronic & severe mental illness including impulsive beh[avior] and mood swings not stable with meds." *Id*. at 541. Dr. Brun provided additional opinions as to other abilities associated with performing semiskilled and skilled work, *id*. at 541-42, which are not necessary to recite given the ALJ's limitation to unskilled work.

Finally, Dr. Brun opined that Plaintiff had moderate restrictions in activities of daily living; marked difficulties in maintaining social functioning; "frequent" deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner; and had repeated episodes of deterioration or decompensation in work or work-like setting which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms.[2] *Id*. at 542-43.

The ALJ rejected Dr. Brun's detailed opinion with little discussion, simply stating:

> After careful consideration of the entire record as a whole, the undersigned finds there is a mental impairment questionnaire at Exhibit 20F which is given little weight as not supported by progress notes and describes the claimant's condition prior to mood stabilizers. The record supports the claimant has the ability to perform simple work activity, interact appropriately with co-workers and supervisors and deal with change in the workplace. The record fully supports the claimant is capable of performing at a reduced light residual functional capacity.

---

[2] Although these functional areas are not stated precisely as used in analyzing a mental impairment, *see*. 20 C.F.R. §§ 404.1520a and 416.920a, they are approximately the same with the exception that the category for "episodes of deterioration or decompensation" is not limited to events "which have been of extended duration" and appears to reflect any withdrawal, however brief, when faced with the appropriate stressor.

13

Tr. at 18. The ALJ did not actually discuss Dr. Brun's progress notes, which include an initial Psychiatric Evaluation with Mental Status Exam on March 25, 2009, in which Dr. Brun diagnosed Plaintiff with a Mood Disorder and Bipolar Disorder and determined her GAF was "55-60." Tr. at 402. She showed mood swings especially with recent distress over son Ryan's chemotherapy treatments and her stepson's arrival home in June 2009. Tr. at 525. Further stressors included finances and continued confrontations with an unsupportive husband as of July 2009. *Id*. Dr. Brun again observed that Plaintiff's mood was "distressed" in September 2009, with stressors that included her family life, sons' health, unsupportive husband and denial of her disability claim. *Id*. The progress notes document further "severe mood swings/sleep diffic[ulty]" in December 2009. Tr. at 524. Plaintiff was further stressed by having her children placed with her mother secondary to Child Protective Services' concern that Plaintiff was over-medicating. *Id*. Dr. Brun also observed that Plaintiff's mood was "fairly stable" on January 20, 2010, but that she continued to labor under stressors including Child Protective Services removing her children (including one in chemotherapy for leukemia, *see* Tr. at 525). Tr. at 545. Plaintiff's mood swings were "intense" in February 2010. Tr. at 545. These progress notes may not detail every finding in Dr. Brun's March 22, 2010, opinion, but they certainly provide sufficient basis for finding that Dr. Brun provided frequent, ongoing and comprehensive psychiatric care for a full year before issuing that opinion.

The ALJ's comment that the opinion predated Plaintiff's placement on mood stabilizers is also incorrect. Dr. Brun explicitly noted in her opinion that she had included "aggressive treatment" with, *inter alia*, the addition of "mood stabilizer." *See* Tr. at 537. Dr. Brun then reported a "mild improvement" in Plaintiff's mood on March 25, 2010, leading to an attitude of "I don't don't care." Tr. at 545. That is hardly a basis for finding a significant improvement with mood stabilizers so as

14

to justify the ALJ's rejection of Dr. Brun's entire opinion. Furthermore, the most recent psychological report in the record is George R. Mount, Ph.D.'s, Clinical Interview and Mental Status Examination on May 4, 2010, six weeks after Dr. Brun's opinion. There, Dr. Mount document a continuing "severe" depression range, a "severe" anxiety range and that Plaintiff is irritable with racing thoughts and problems with concentration. Tr. at 604-05. These findings are wholly consistent with Dr. Brun's. Dr. Mount also diagnosed Plaintiff with Bipolar I Disorder, Most Recent Episode, Depressed, Severe without Psychotic Features and a Pain Disorder Associated with both Psychological Factors and a General Medical Condition, Chronic, along with a Borderline Personality Disorder and a GAF of 50, as well as assessing her with a "guarded" prognosis. Tr. at 605-06. Again, these diagnoses, GAF determination and prognosis are remarkably similar to Dr. Brun's.

The ALJ mentioned Dr. Mount's assessment. However, he went on to observe that the testifying, non-examining medical expert, Dr. McClure, opined during the administrative hearing that Plaintiff:

> . . . would be able to maintain an 8 hour workday or 40 hour workweek as she was able to follow simple instructions, interact appropriately with co-workers and supervisors and deal with change in a routine work setting. The undersigned finds agreement with the opinion of Dr. McClure and adopts the opinion as his own.

Tr. at 18. That opinion directly contradicts Dr. Brun's opinion and appears to either disregard or minimize the clinical findings of both Dr. Brun and Dr. Mount.

Of course, an ALJ may rely on a testifying medical expert. *See Perales*, *supra*, 402 U.S. at 408. Indeed, it is well settled that a non-examining medical expert's opinion and assessment of residual functional capacity is not only admissible in evidence (20 C.F.R. §§ 404.1527(e) and 416.927(e)) but may constitute substantial evidence of non-disability when not in conflict with the clinical findings or other examining or treating doctors. *Perales*, 402 U.S. at 401; *Califano v. Boles*,

443 U.S. 282, 285, note 4, 99 S. Ct. 2767, 61 L. Ed. 2d 541 (1979); *Villa*, *supra*, 895 F.2d at 1024; *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir. 1991) (per curiam); *Goldman v. Schneider*, 660 F.2d 1078, 1084 (5th Cir. 1981). Here, Dr. McClure's opinion does conflict with the diametrically opposite opinion of Dr. Brun and appears in conflict with Dr. Mount's clinical findings of irritability, severe depression and anxiety, and lack of concentration as well.

Moreover, as stated above, an ALJ may not rely on a non-treating, non-examining physician's opinion over the contrary opinion of a treating specialist. *See Newton*, 209 F.3d at 456-57. In this case, the non-examining medical expert, Dr. McClure, essentially summarized his own opinion *vis-a-vis* Dr. Brun's as:

> It's even - - let me look at my notes and then at - - oh, it's - - yeah, what I had looked at of the overall record when I - - there are several notes by that physician throughout the record, there are progress notes and things - - [. . .] - - and I didn't look - - feel that her progress notes fully supported her conclusions in that exhibit.

Tr. at 36 (testimony of Dr. McClure). In other words, he substituted his own opinion for Dr. Brun's based on Dr. Brun's progress notes, despite Dr. Brun's continuous course of treatment of the Plaintiff.

Dr. McClure also discounted Dr. Mount's opinion because the attached Millon Clinical Multiaxial Inventory-III "indicated that the claimant had some exaggerations" in her symptoms, which Dr. McClure opined made the MCMI-III "questionable in terms of how accurate it is." Tr. at 34. However, in making that assessment, he replaced Dr. Mount's opinion as an examining physician with his own opinion based simply on reading a single report.

Compounding the ALJ's misplaced reliance on Dr. McClure's opinion is that the ALJ did not carry out the factor-based analysis required in 20 C.F.R. §§ 404.1527(c) and 416.927(c) and *Newton*, 209 F.3d at 456. Here, there was no contradictory opinion by any other treating or examining

physician that would obviate the requirement to complete this analysis; there was only the opinion of non-examining psychologist Dr. McClure. That is insufficient.

Therefore, this case must be reversed and remanded for further consideration of Dr. Brun's opinion, as it applies to determining Plaintiff's RFC and overall disability analysis. The Court notes that Plaintiff also takes issue with both the mental and physical limitations expressed in the ALJ's determination of her RFC. This reversal necessarily addresses the mental component; Plaintiff is free to re-raise the issue of her physical RFC on remand. It is not necessary to address it further here.

It is accordingly

**ORDERED** that the decision of the Commissioner is hereby **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration of Dr. Brun's opinion as a treating psychiatrist and its application to determination of Plaintiff's mental RFC and overall disability status. If it is necessary to obtain additional consultative examination evidence or to conduct a further administrative hearing, an ALJ should do so.

So **ORDERED** and **SIGNED** this **28** day of **December, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE